UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| *In re Tampa Bay Rays Baseball Ltd. TCPA Litigation.* | CONSOL. CASE NO: 8:18-cv-1187-EAK-MAP <br><br> JURY TRIAL DEMANDED AND INJUNCTIVE RELIEF SOUGHT |

## CONSOLIDATED AMENDED CLASS ACTION COMPLAINT

Plaintiffs Chad Fernandez ("**Fernandez**") and James Thomas ("**Thomas**") (Fernandez and Thomas each a "**Plaintiff**" and collectively the "**Plaintiffs**"), individually and on behalf of all other similarly situated persons, complain and allege as follows:

## NATURE OF ACTION

1.     Major League Baseball television ratings and game attendance have been plummeting for years. Eager to stay on their fans' minds, professional baseball team franchisees and the league flouted their obligations under the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("**TCPA**") and deployed intrusive marketing strategies to maintain fan engagement and bolster sales.

2.     Plaintiffs bring this action for statutory damages and other legal and equitable remedies resulting from the illegal actions of Defendants Tampa Bay Rays Baseball Ltd. ("**TB Rays**") and MLB Advanced Media, L.P. ("**MLB Media**") (TB Rays and MLB Media each a "**Defendant**" and collectively the "**Defendants**") in transmitting advertisement and telemarketing text messages to Plaintiffs' cellular telephones and the cellular telephones of numerous others similarly situated using

an automatic telephone dialing system ("**ATDS**") without anyone's prior express written consent and in violation of the TCPA.

## PARTIES

3.     Plantiff Fernandez is, and at all times relevant hereto was, an individual and a "person" as defined by 47 U.S.C. § 153(39), a citizen and resident of Miami-Dade County, Florida, and the subscriber and user of the cellular telephone number (305) ***-2432 (the "**2432 Number**").

4.     Plaintiff Thomas is, and at all times relevant hereto was, an individual and a "person" as defined by 47 U.S.C. § 153(39), a citizen and resident of Pinellas County, Florida, and the subscriber and user of the cellular telephone number (727) ***-8761 (the "**8761 Number**") (the 2432 Number and the 8761 Number collectively the "**Plaintiffs' Cell Numbers**").

5.     Defendant TB Rays is, and at all times relevant hereto was, a limited partnership organized under the laws of Florida and a "person" as defined by 47 U.S.C. § 153(39).  TB Rays' primary corporate headquarters are in St. Petersburg, Florida.

6.     Defendant MLB Media is, and at all times relevant hereto was, a limited partnership organized under the laws of Delaware and a "person" as defined by 47 U.S.C. § 153(39).  MLB Media's primary corporate headquarters are located at 75 Ninth Avenue in New York, New York ("**MLB Media Corporate HQ**").

## JURISDICTION AND VENUE

7.     This Court has original jurisdiction over this case pursuant to 28 U.S.C. § 1331 because it arises under the laws of the United States.

8.     This Court has subject matter jurisdiction over this action pursuant to 47 U.S.C. § 227(b)(3).

9.     TB Rays is subject to general personal jurisdiction in Florida because it resides in, is permantly located in, and conducts substantial business in Florida.

10.     TB Rays is additionally subject to personal jurisdiction in Florida because it initiated and directed, or caused to be initiated and directed by its agent(s), advertisement or telemarketing text messages into the state of Florida, via an ATDS and without the requisite prior express written consent, in violation of the TCPA. Specifically, TB Rays initiated and directed, or caused to be initiated and directed by its agent(s), the transmission of unsolicited advertisement or telemarketing text messages to the 8761 Number (which bears a (727) area code that specifically corresponds to locations in Florida) and the 2432 Number (which bears a (305) area code that also specifically corresponds to locations in Florida).  Plaintiffs received such messages while residing in and physically present in Florida.  TB Rays' products or services advertised or marketed in such messages are similarly sold in Florida.

11.     MLB Media is also subject to personal jurisdiction in Florida because it initiated and directed, or caused to be initiated and directed by its agent(s), advertisement or telemarketing text messages into the state of Florida, via an ATDS and without the requisite prior express written consent, in violation of the TCPA.

Specifically, MLB Media initiated and directed, or caused to be initiated and directed by its agent(s), the transmission of unsolicited advertisement or telemarketing text messages to the 8761 Number (which bears a 727 area code that specifically corresponds to locations in Florida) and the 2432 Number (which bears a 305 area code that specifically corresponds to locations in Florida). Plaintiffs received such messages while residing in and physically present in Florida. MLB Media's products and/or services that were advertised or marketed in the complained of text messages are similarly sold in Florida.

12. Plaintiffs' claims for violation of the TCPA against Defendants, and the resulting injuries caused to Plaintiffs by Defendants' advertisement and telemarketing messages, including the invasion of  Plaintiffs' privacy, arose in substantial part from Defendant's direction of those messages into Florida.

13. Venue is proper in this judicial district under each of the bases for proper venue set forth in 28 U.S.C. § 1391. Venue is proper in this judicial district pursuant to  § 1381(b)(1) because TB Rays resides in this district. Venue is also proper in this judicial district under § 1391(b)(2) because a substantial part of Defendants' actions and omissions which gave rise to the claims asserted in this action occurred here. In addition, venue is proper in this judicial district under § 1391(b)(3) because all Defendants are subject to this court's personal jurisdiction with respect to this action.

## THE TELEPHONE CONSUMER PROTECTION ACT OF 1991

14. To address consumer complaints regarding certain telemarketing practices, Congress enacted the TCPA, 47 U.S.C. § 227, in 1991. The TCPA prohibits,

*inter alia,* making any call, or sending any text message, to a wireless number via an ATDS absent an emergency or the prior express written consent of the party called.

15. By enacting the TCPA, Congress made specific findings that "unrestricted marketing can be an intrusive invasion of privacy" and a "nuisance." Telephone Consumer Protection Act of 1991, Pub. L. 102-243, § 2, ¶¶ 5, 10, 12, 13, 105 Stat. 2394 (1991); *see also Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 132 S. Ct. 740, 745, 181 L. Ed. 2d 881 (2012). Through the TCPA, Congress sought to protect consumers from the unwanted intrusion and nuisance of unsolicited telemarketing calls and advertisements. *See* Pub. L. 102-243, § 2, ¶ 12.

16. According to findings by the Federal Communications Commission ("**FCC**"), which is vested with authority to issue regulations implementing the TCPA, autodialed calls and texts are prohibited absent the requisite consent because such transmissions are a greater nuisance than live solicitation calls, and receiving and addressing such calls and texts can be costly and inconvenient. The FCC also recognizes that wireless customers are charged for such incoming calls and texts whether they pay in advance or after the minutes or texts are used.

17. According to a recent study conducted by the Pew Research Center, "[s]pam isn't just for email anymore; it comes in the form of unwanted text messages of all kinds - from coupons to phishing schemes - sent directly to user's cell phones." Indeed, one of the most prevalent bulk advertisement and telemarketing methods employed by companies today involves the use of "Short Message Services" or "SMS", which is a system that allows for the transmission and receipt of short text messages

to and from wireless telephones (referred to simply as "text messages"). Indeed the Pew Reseearch center believes that "57% of adults with cell phones have received unwanted or spam text messages on their phone."

18.     Text messages are directed to a wireless device through a telephone number assigned to the device. When a text message is successfully transmitted, the recipient's wireless phone alerts the recipient that a message has been received. Because wireless telephones are physically carried by their owners, text messages are received virtually anywhere in the world.

19.     Unlike    more    conventional    commercials,    advertisement    and telemarketing conveyed via text messages can actually cost their recipients money. This is because wireless phone users must either pay their wireless service providers for each text message they receive or incur a usage allocation deduction to their text messaging or data plan, regardless of whether the message is even authorized or wanted.

20.     In response to growing concern over unwanted advertisements and telemarketing material being sent to consumers via text message, the FCC updated its rules on consent to require companies to obtain the "**prior express written consent**" of the recipient before using an ATDS to make any call or send any text message that contains "advertisements" or "telemarketing." *See* 47 C.F.R. 64.1200(f)(8).

## FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS

### a.    *Defendants' Integrated Text Message Marketing Campaign*

21.    MLB Media is a limited partnership of the club owners of Major League Baseball ("**MLB**") which operates as the internet, telephone, and media marketing arm for MLB.

22.    Given that MLB club owners provided MLB Media's initial capital contributions, MLB Media is under constant pressure to perform.

23.    Desperate to help drive the fan engagement that the MLB club owners so critically rely on, and to combat nosediving ratings and declining fan engagement, MLB Media and the club owners, including TB Rays, began skirting their obligations under the TCPA and employed intrusive telephone marketing strategies.

24.    As part of a sophisticated scheme to gain access to baseball fans' cell phones in order to bombard them with advertisements and telemarketing pitches, MLB Media registered the following short code telephone numbers:

| Team Name: | Short Code Telephone Number(s): | Registered Address: | Registered Phone No. / Email |
|---|---|---|---|
| Rays | 42086 | MLB Media Corporate HQ | (212) 485-3740 matt.kelly@mlb.com |
| Cubs | 88019 | MLB Media Corporate HQ | (212) 485-3740 matt.kelly@mlb.com |
| Orioles | 31826 | MLB Media Corporate HQ | (212) 485-3740 matt.kelly@mlb.com |
| Diamondbacks | 76925 | MLB Media Corporate HQ | (212) 485-3740 matt.kelly@mlb.com |
| Giants | 99778/80899 | MLB Media Corporate HQ | (212) 485-3740 matt.kelly@mlb.com |
| Reds | 66128 | MLB Media Corporate HQ | (212) 485-3740 matt.kelly@mlb.com |
| Mariners | 71532 | MLB Media Corporate HQ | (212) 485-3740 matt.kelly@mlb.com |
| Cardinals | 82810 | MLB Media | (212) 485-3740 |

| | | Corporate HQ | matt.kelly@mlb.com |
|---|---|---|---|
| Rockies | 97475 | MLB Media | (212) 485-3740 |
| | | Corporate HQ | matt.kelly@mlb.com |
| Phillies | 49887 | MLB Media | (212) 485-3740 |
| | | Corporate HQ | matt.kelly@mlb.com |
| Braves | 78030 | MLB Media | (212) 485-3740 |
| | | Corporate HQ | matt.kelly@mlb.com |
| Brewers | 69478 | MLB Media | (212) 485-3740 |
| | | Corporate HQ | matt.kelly@mlb.com |
| Angels | 42951 | MLB Media | (212) 485-3740 |
| | | Corporate HQ | matt.kelly@mlb.com |
| Royals | 42682 | MLB Media | (212) 485-3740 |
| | | Corporate HQ | matt.kelly@mlb.com |
| White Sox | 244769 | MLB Media | (212) 485-3740 |
| | | Corporate HQ | matt.kelly@mlb.com |
| Nationals | 91347 | MLB Media | (212) 485-3740 |
| | | Corporate HQ | matt.kelly@mlb.com |
| Red Sox | 23215 | MLB Media | (212) 485-3740 |
| | | Corporate HQ | matt.kelly@mlb.com |
| Pirates | 61592 | MLB Media | (212) 485-3740 |
| | | Corporate HQ | matt.kelly@mlb.com |
| Padres | 78469 | MLB Media | (212) 485-3740 |
| | | Corporate HQ | matt.kelly@mlb.com |
| Mets | 48593/88932 | MLB Media | (212) 485-3740 |
| | | Corporate HQ | matt.kelly@mlb.com |
| Twins | 51655 | MLB Media | (212) 485-3740 |
| | | Corporate HQ | matt.kelly@mlb.com |
| Astros | 26099 | MLB Media | (212) 485-3740 |
| | | Corporate HQ | matt.kelly@mlb.com |
| Marlins | 37956 | MLB Media | (212) 485-3740 |
| | | Corporate HQ | matt.kelly@mlb.com |
| Indians | 38955 | MLB Media | (212) 485-3740 |
| | | Corporate HQ | matt.kelly@mlb.com |
| Dodgers | 41623 | MLB Media | (212) 485-3740 |
| | | Corporate HQ | matt.kelly@mlb.com |
| Athletics | 60946 | MLB Media | (212) 485-3740 |
| | | Corporate HQ | matt.kelly@mlb.com |

25.    The shortcode telephone numbers listed in the preceding paragraph were each leased, purchased, or otherwise acquired by Defendant MLB Media and are each an "**MLB Media Shortcode**" and collectively the "**MLB Media Shortcodes**."

26.    The MLB Media Shortcodes were all obtained from Telcordia Technologies, Inc., a company that assigns these number resources. All the shortcodes above are registered to the MLB Media Corporate HQ.

27.    With control over the integrated network of short code dialing numbers that make up the MLB Media Shortcodes, MLB Media next encourages respective team managements to develop and copyright text message marketing campaigns for each of the teams. These text message promotions are developed by the teams, in many instances with the help of MLB Media. Once a promotion or advertisement is finalized, MLB Media causes it to be sent out to consumers via text message, *en masse*, from the MLB Media Shortcodes.

### b. *TB Rays' Participation in MLB Media's Integrated Text Scheme*

28.    TB Rays operates the Tampa Bay Rays MLB team in the Eastern Division of the American League.

29.    TB Rays operates an advertisement and telemarketing campaign that involves sending advertisement and telemarketing text messages to consumers' wireless telephones without first obtaining their prior express written consent.

30.    Through MLB Media, TB Rays uses the MLB Media Shortcode 42086 to send  advertisement and telemarketing text messages to consumers and to further MLB Media's and TB Rays' marketing campaigns. Advertisement and telemarketing text messages from Defendants that promote TB Rays are sent from MLB Media Shortcode 42086.

### c. *Fernandez Receives Unsolicited Marketing Messages from Defendants*

31.     On March 22, 2018, Defendants transmitted or caused to be transmitted

the following text message to the 2432 Number from MLB Media Shortcode 42086:

> Opening Day is one week away!
> Get your tickets now and join
> the Rays for the start of the
> 2018 season. http://atmlb.com/2HTrLoi
> Text STOP to cancel

32.     On March 22, 2018, Defendants transmitted or caused to be transmitted

the following text message to the 2432 Number:

> Happy Opening Day 2018! The
> Rays season begins today at
> 4:00pm as they take on the
> Boston Red Sox. Game info:
> https://bit.ly/ly2GXec8h Text
> STOP to cancel

33.     On April 27, 2018, Defendants transmitted or caused to be transmitted

the following text message to the 2432 Number:

> Today only: $20-Press Level
> tickets for Blue Jays vs. Rays
> matchup on Saturday, May 5, at
> 6:10! https://atmlb.com/2qYO85D
> Text STOP to cancel

34.     On May 4, 2018, Defendants transmitted or caused to be transmitted

the following text message to the 2432 Number:

> Today only, purchase $12–
> lower level tix for STAR WARS
> Night on Sat. 5/25 when the
> Rays host the O's at 4:10 pm
> https://atmlb.com/2rkJy0X Text
> STOP to cancel

35.    The messages described immediately above were received by Fernandez

on the 2432 Number from the MLB Media Shortcode 42086.

36.    The 2432 Number is, and at all times mentioned herein was, assigned

to a cellular telephone service as specified in 47 U.S.C. § 227 (b)(1)(A)(iii).

### d. Thomas Receives Unsolicited Marketing Messages from Defendants

37.    On or about September 27, 2017, Defendants transmitted or caused to

be transmitted the following text message to the 8761 Number:

> The final Rays series of
> the 2017 season begins
> Friday night. Join us at
> the ballpark! http://
> atmlb.com/2XD1wAd
> Reply STOP to cancel

38.    On or about November 15, 2017, Defendants transmitted or caused to

be transmitted the following text message to the 8761 Number:

> Holiday Flex Packs are
> on sale now! Get 5
> tickets for $75 and a
> Rays Fleece Blanket
> with each pack.
> #RaysUp http://
> atmlb.com/2juGz5H
> Text STOP to cancel

39.    On or about November 27, 2017, Defendants transmitted or caused to

be transmitted the following text message to the 8761 Number:

> TODAY ONLY: Purchase
> a Flex Pack (5 tickets for
> $75) & get an Archer
> Emoji Pillow with your
> Rays Fleece Blanket!
> http://atmlb.com/

2ibzHdj Text STOP to
cancel

40.     On or about January 19, 2018, Defendants transmitted or caused to be

transmitted the following text message to the 8761 Number:

Baseball is nearly here
so don't miss any of the
action! Rays Spring
Training single game
Tickets are on sale now.
http://atmlb.com/
2mSPrRz Text STOP to
Cancel

41.     On or about February 7, 2018, Defendants transmitted or caused to be

transmitted the following text message to the 8761 Number:

Join the Rays as we
celebrate the 20th
anniversary of Rays
baseball with events all
year long! http://
atmlb.com/2BOpkjx
Text STOP to cancel

42.     On or about February 9, 2018, Defendants transmitted or caused to be

transmitted the following text message to the 8761 Number:

Fan Fest is tomorrow!
Help us lead off the
start of the season at
Tropicana Field from
11am-4pm. http://
atmlb.com/2EJEoll Text
STOP to cancel

43.     On or about February 16, 2018, Defendants transmitted or caused to be

transmitted the following text message to the 8761 Number:

> Batter up! Single Game
> Tickets are on sale now
> exclusively through
> raysbaseball.com. Get
> your tickets today!
> http://atmlb.com/
> 2C3DCRG Text STOP to
> cancel

44.     On or about March 22, 2018, Defendants transmitted or caused to be transmitted the following text message to the 8761 Number:

> Opening Day is one
> week away! Get your
> tickets now and join the
> Rays for the start of the
> 2018 season. http://
> atmlb.com/2HTrLoi Text
> STOP to cancel

45.     On or about March 29, 2018, Defendants transmitted or caused to be transmitted the following text message to the 8761 Number:

> Happy Opening Day
> 2018! The Rays season
> begins today at 4:00pm
> as they take on the
> Boston Red Sox. Game
> info: https://bit.ly/
> 2GXec8h Text STOP to
> cancel

46.     On or about April 27, 2018, Defendants transmitted or caused to be transmitted the following text message to the 8761 Number:

> Today only: $20-Press
> Level tickets for Blue
> Jays vs. Rays matchup
> on Saturday, May 5 at
> 6:10! https://
> atmlb.com/2qYO85D

Text STOP to cancel

47.    On or around May 4, 2018, Defendants transmitted or caused to be transmitted the following text message to the 8761 Number:

> Today only: purchase
> $12-lower level tix for
> STAR WARS Night on
> Sat. 5/26 when the
> Rays host the O's at
> 4:10 p.m. https://
> atmlb.com/2rkJyOX
> Text STOP to cancel

48.    On or around August 3, 2018, Defendants transmitted or caused to be transmitted the following text message to the 8761 Number:

> Join the Rays tomorrow
> for the 2008
> Celebration! Alumni
> Autographs, a special
> Pregame ceremony and
> More! Info:  https://
> atmlb.com/20BaiFl Text
> STOP to cancel

49.    On or around September 3, 2018, Defendants transmitted or caused to be transmitted the following text message to the 8761 Number:

> Today only: Get 2
> Outfield tickets for $20-
> to any game during the
> Orioles vs. Rays series
> on September 7-9.
> https://atmlb.com/
> 2LETvyi Text STOP to
> cancel

50.    The messages described immediately above were received by Thomas on the 8761 Number from the MLB Media Shortcode 42086.

14

51.     The 8761 Number is, and at all times mentioned herein was, assigned to a cellular telephone service as specified in 47 U.S.C. § 227 (b)(1)(A)(iii).

### e. The Messages Sent to the Plaintiffs' Cell Numbers

52.     When entered into an internet browser, the links within the text messages that the Plaintiffs received from the MLB Media Shortcode 42086 as described above bring the user to a website that offers the sale of baseball tickets and other merchandise. Upon information and belief, Defendants use tracking software to track whenever consumers, like Plaintiffs, open the messages they receive or when they click on one of the links contained within them.

53.     The complained of text messages sent to the Plaintiffs' Cell Numbers advertised the commercial availability of Major League Baseball tickets, game programming, and other merchandise.

54.     The complained of text messages sent to the Plaintiffs' Cell Numbers constitute advertisements defined by 47 C.F.R. § 64.1200(f)(1).

55.     The complained of text messages sent to the Plaintiffs' Cell Numbers were initiated for the purpose of encouraging the purchase of Major League Baseball tickets.

56.     The complained of text messages sent to the Plaintiffs' Cell Numbers constitute telemarketing defined by 47 C.F.R. § 64.1200(f)(12).

57.     The source of each of the unsolicited text messages sent by Defendants to the Plaintiffs' Cell Numbers was 42086, which is a short code owned or leased by or on behalf of Defendants or Defendants' agent(s) or affiliate(s), and is used for

operating Defendants' text message marketing campaigns, including the sending of text messages telemarketing and advertising various of Defendants' goods and services.

58.     All telephone contact by Defendants and/or their affiliates, subsidiaries, or agents of Defendants to Plaintiffs at the Plaintiffs' Cell Numbers occurred via an ATDS ("automated telephone dialing system") as defined by 47 U.S.C. § 227(b)(1)(A) because the unsolicited telemarketing text messages were sent from 42086, which is a short code telephone number used to message consumers *en masse*, and because the hardware and software used by Defendants or their agents to send such messages have the capacity to store, produce, and dial either random or sequential numbers, and to dial such numbers, *en masse*, in an automated fashion without human intervention. Further, the complained of text messages were written in a generic and impersonal manner.

59.     The complained of text messages sent to the Plaintiffs' Cell Numbers did not constitute calls made for an emergency purpose as defined by 47 U.S.C. § 227(b)(1)(A)(i).

60.     Defendants' text messages were sent to the Plaintiffs without first providing them with disclosures to which they are entitled under the TCPA, the messages invaded each of the Plaintiffs' privacy, intruded upon each of their seclusion and solitude, constituted a nuisance, and wasted both of their time by requiring them to interact with the messages. Further, Defendant's text messages caused Plaintiffs to incur tangible harms such as loss of cell phone battery life and financial losses in

16

requiring them to recharge his phone. Finally, Defendants' text messages constituted a temporary electronic intrusion upon each of the Plaintiffs' cell phones.

61.     The Plaintiffs have no reason to believe, that absent a Court Order, Defendants would voluntarily stop violating the TCPA.

### f. MLB Media Runs Text Blasts Nationwide

62.     The advertisement and telemarketing text messages that the Plaintiffs received on the Plaintiffs' Cell Numbers are part of a common course of conduct and practice developed, orchestrated, and managed by MLB Media.

63.     A non-exhaustive recitation of MLB Media's nationwide and unlawful texting practices through which MLB Media sent advertisement and telemarketing text messages to consumers is set forth below.

64.     MLB Media used MLB Media Shortcode 99778 to send the following advertisement and telemarketing text messages:  on March 4, 2018 ("WATCH the Giants vs. Dodgers"); March 22, 2018 ("Watch LIVE"); April 6, 2018 ("Game to start at 3:05 p.m."); April 16, 2018 ("Run the 5k/10k/half marathon on 9/9/18 to get [a bobblehead]"); May 10, 2018 ("Watch Giants"); August 11, 2018 ("Limited Tix available"); November 27, 2018 ("Get your Opening Day and Yankees tickets"); January 8, 2019 ("receive a shirt"); February 9, 2019 ("Tickets on sale now"); and February 21, 2019 ("Buy now").

65.     MLB Media also used MLB Media Shortcode 88019 to send similar advertisement and telemarketing text messages on September 14, 2019 ("chance to purchase 2018 postseason tickets"); January 25, 2019 ("Secure your 8- or 14-game

ticket pack"); and on February 22, 2019 ("Secure your Cubs tickets").

66.     MLB Media likewise used MLB Media Shortcode 37956 to send advertisement and telemarketing messages on March 28, 2018 ("Get to Marlins Park early"); April 2, 2018 ("Tix still available"); April 9, 2018 ("Join us for a division-rival matchup"); April 13, 2018 ("Tonight is Burger & Beer Friday at Marlins Park!"); and May 24, 2018 ("Buy: https://atmlb.com/2Lqhr9T").

67.     MLB Media similarly utilized MLB Media Shortcode 244769 to send advertisement and telemarketing messages on July 27, 2018 ("Marvel Super Hero ™ Night"); July 31, 2018 ("White Sox Bleachers & Brews: 1 bleacher ticket + 2 beers for just $22"); August 8, 2018 ("Bobbleheads presented by Wintrust, first 20K"); and August 11, 2018 ("jackpot is already at $20,000- - Sales end at the end of the 6th inning").

68.     Consistent with MLB Media's common course of conduct and practice, MLB Media used MLB Media Shortcode 71532 to send the following advertisement and telemarketing text messages on May 10, 2018:  ("$10-seats for his next home start");  and May 22, 2018 ("Mariners Flash Sale: $10-Bleacher Sears").

69.     MLB Media used MLB Media Shortcode 42951 to send the following advertisement and telemarketing  text messages: "5/19 is Wine Night at The Big A" (May 18, 2018); "Join the Halos at The Big A on 6/3 for Family Sunday" (May 30, 2018); and "Fans get a Trout Birthday shirt" (August 3, 2018).

70.     Consistent with MLB Media's common course of conduct and practice, MLB Media used MLB Media Shortcode 41623 to urge consumers to purchase

18

baseball tickets by promoting their scarcity: "Limited Dodgers tix left" (April 20, 2018).

71.     Consistent with MLB Media's commom course of conduct and practice, MLB Media sent advertisement and telemarketing text messages using MLB Media Shortcode 26099 to offer fans a chance to "See the Ring and Championship Fan Collection NOW https://atmlb.com/2JfzBdn") (April 3, 2018). When entered into an internet browser, the link within the text messages sent from the MLB Media Shortcode 26099 brings the consumer to a website offering, *inter alia*, subscriptions to MLB.TV, the sale of baseball tickets, and the sale of MLB trademarked merchandise.

72.     Through MLB Media's common practice and course of conduct MLB Media sent the following similar advertisement and telemarketing text messages: "Tix still available" (April 2, 2018) (MLB Media Shortcode 41835); "Use your refund for 53% off Nats tix" (April 17, 2018) (MLB Media Shortcode 91347); "Tune in to tonight's game" (September 7, 2018) (MLB Media Shortcode 38955); "4 tix, parking & 2 OF play passes for $49" (April 26, 2018) (MLB Media Shortcode 42682); "Tickets are $10 and up" (May 17, 2018) (MLB Media Shortcode 66128); and "Yankees are coming to Oracle Part this weekend! Tickets available – starting at $49 https://atmlb.com/2UVwpNm") (April 25, 2019) (MLB Media Shortcode 80899).

73.     MLB Media sent or caused to be sent advertisement and telemarketing text messages to consumers from each of MLB Media's Shortcodes.

74.     The text messages sent by MLB Media from the MLB Media Shortcodes advertised the commercial availability of Major League Baseball tickets, game programming, and other merchandise.

75.     The text messages sent by MLB Media from the MLB Media Shortcodes constitute advertisements defined by 47 C.F.R. § 64.1200(f)(1).

76.     The text messages sent by MLB Media from the MLB Media Shortcodes were initiated for the purpose of encouraging the purchase of Major League Baseball tickets.

77.     The text messages sent by MLB Media from the MLB Media Shortcodes constitute telemarketing defined by 47 C.F.R. § 64.1200(f)(12).

78.     The source of each of the text messages sent by MLB Media from the MLB Media Shortcodes were all five to six digit short code telephone numbers (as set forth above), which are short codes owned or leased by or on behalf of MLB Media or MLB Media's agent(s) or affiliate(s), and are used for operating MLB Media's and its agents' or affiliates' text message marketing campaigns, including the sending of text messages to Plaintiffs and others to market and advertise various of MLB Media's and its agents' or affiliates' goods and services.

79.     All telephone contact by MLB Media and/or its affiliates, subsidiaries, or agents occurred via an ATDS as defined by 47 U.S.C. § 227(b)(1)(A) because the unsolicited telemarketing text messages were sent from the MLB Media Shortcodes, which are short code telephone numbers used to message consumers *en masse*, and because the hardware and software used by MLB Media or its agents to send such

20

text messages have the capacity to store, produce, and dial either random or sequential numbers, and to dial such numbers, *en masse*, in an automated fashion without human intervention. Further, the complained of text messages were all written in a generic and impersonal manner thus demonstrating their automated dissemination.

80.    The complained of text messages sent from the MLB Media Shortcodes did not constitute calls made for an emergency purpose as defined by 47 U.S.C. § 227(b)(1)(A)(i).

## CLASS ACTION ALLEGATIONS

81.    The Plaintiffs bring this lawsuit as a class action on behalf of themselves individually and all other similarly situated persons as a class action pursuant to F.R.C.P. 23(b)(3).  The classes the Plaintiffs seek to represent are comprised of and defined as follows and collectively referred to as the "Class":

a.    As it relates to MLB Media:

All persons within the United States who, without having provided the required prior express written consent, received a text message, sent by or on behalf of Defendants or an affiliate, subsidiary, or agent of Defendants from any MLB Media Shortcode.

b.    As it relates to MLB Media and TB Rays:

All persons within the United States who, without having provided the required prior express written consent, received a text message, sent by or on behalf of TB Rays or an affiliate, subsidiary, or agent of TB Rays from short code telephone number 42086.

21

82.     Excluded from the Classes are Defendants, any entity in which Defendants have a controlling interest or which has a controlling interest of either of Defendants, and any of Defendants' legal representatives, assigns or successors. Also excluded is any judge presiding over this case and any member of any such judge's immediate family. Members of the Classes are referred to as "**Class Members**."

83.     Plaintiffs reserve the right to modify the definition of the Class (or add one or more subclasses) after further discovery.

84.     Plaintiffs and all Class Members have been impacted and harmed by the acts of Defendants and/or their agents, affiliates or subsidiaries.

85.     Plaintiffs seek injunctive relief and monetary damages on behalf of themselves and the Classes.

86.     This action may properly be brought and maintained as a class action pursuant to Fed. R. Civ. P. 23(b)(3). This class action satisfies the numerosity, typicality, adequacy, commonality, predominance and superiority requirements.

87.     Upon application by Plaintiffs' counsel for certification of the Classes, the Court may also be requested to utilize and certify subclasses in the interests of manageability, justice, and/or judicial economy.

88.     <u>Numerosity</u>. The number of persons within the Class is substantial, believed to amount to thousands of persons dispersed throughout the United States. It is therefore impracticable to join each member of the Class as a named plaintiff. Further, the size and relatively modest value of the claims of the individual members of the Class renders joinder impracticable. Accordingly, utilization of the class action

mechanism is the most economically feasible means of determining and adjudicating the merits of this litigation.

89.     Typicality. Plaintiffs each received at least one text message from Defendants sent via an ATDS without providing their "prior express written consent" to receive "advertisement or "telemarketing" text messages via an "ATDS" within the meaning of the TCPA. Consequently, the Plaintiffs' claims are typical of those of the other Class Members they seek to represent, and Plaintiffs' interests are consistent with and not antagonistic to those of the other Class Members they seek to represent. Plaintiffs and all Class Members have been impacted by, and face continuing harm resulting from, Defendant's violations and/or misconduct as alleged herein.

90.     Adequacy. As Class representatives,  Plaintiffs have no interests that are adverse to, or conflict with, the interests of the absent Class Members and they are able to fairly and adequately represent and protect the interests of the Class Members.  The Plaintiffs have raised viable claims of the type reasonably expected to be raised by the Class Members and will vigorously pursue those claims. If necessary, the Plaintiffs may seek leave to amend this Complaint to add additional representatives of the Class or assert additional claims.

91.     Competency of Class Counsel. The Plaintiffs have both retained and are represented by experienced, qualified and competent counsel committed to prosecuting this action. These counsel are experienced in handling complex class action claims, including alleging violations of the TCPA.

92.     Commonality and Predominance. There are well defined common

questions of fact and law that exist as to all members of the Class and predominate over any questions affecting only individual members of the Class. These common legal and factual questions do not vary from Class Member to Class Member, may be determined without reference to the individual circumstances of any class member, and  include (but are not limited to) the following:

a. Whether Defendants and/or any of their affiliates, subsidiaries, or agents transmitted, or caused to be transmitted, advertisement or telemarketing text messages to Class Members' cellular telephones;

b. Whether the text messages transmitted by Defendants and/or any of their affiliates, subsidiaries, or agents were transmitted using an automatic telephone dialing system;

c. Whether Defendants and/or any of their affiliates, subsidiaries, or agents can prove their burden that they obtained prior express written consent (as defined by 47 C.F.R. 64.1200(f)(8)) of all receipients to send the complained of text messages;

d. Whether the complained of conduct was knowing and/or willful;

e. Whether Defendants and/or any of their affiliates, subsidiaries, or agents should be enjoined from engaging in such conduct in the future.

93.     Superiority. A class action is superior to other available methods for the fair and efficient adjudication of this controversy because individual litigation of the claims of all Class Members is impracticable. Even if Class Members could afford to pursue individual litigation, the Court system could not. It would be unduly

burdensome to the courts for individual litigation of numerous cases to proceed. Individualized litigation also presents the potential for varying, inconsistent or contradictory judgments, and would magnify the delay and expense to all parties and the court system resulting from multiple trials of the same factual issues. By contrast, the maintenance of this action as a class action, with respect to some or all the issues presented herein, presents few management difficulties, conserves the resources of the parties and of the court system and protects the rights of each Class Member. The Plaintiffs do not anticipate any difficulty in the management of this action as a class action.

94.    <u>Superiority is also present here because c</u>lass wide relief is essential to compel compliance with the TCPA. The interest of Class Members in individually controlling the prosecution of separate claims is small because the statutory damages in an individual action for violation of the TCPA are small. Management of these claims is likely to present significantly fewer difficulties than are presented in many class claims because the text messages at issue are all automated and the Class Members, by definition, did not provide the prior express written consent required under the statute to authorize such text messages to their cellular telephones. The Class Members can be readily located and notified of this class action through Defendants' records and, if necessary, the records of cellular telephone providers. Indeed, Defendants have been regularly contacting the Class Members, albeit unlawfully, using records already in their possession.

95.    Additionally, the prosecution of separate actions by individual Class

Members may create a risk of multiple adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other members of the Class who are not parties to such adjudications, thereby substantially impairing or impeding the ability of such nonparty Class Members to protect their interests. The prosecution of individual actions by Class Members could further establish inconsistent results and/or establish incompatible standards of conduct for Defendants.

96.     Defendants and/or any of their affiliates, subsidiaries, or agents have acted on grounds generally applicable to the Class, thereby making final injunctive relief and corresponding declaratory relief with respect to the Class appropriate.

97.     Moreover, on information and belief, the TCPA violations complained of herein are substantially likely to continue in the future if an injunction is not entered.

## CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF
### VIOLATION OF THE TCPA (47 U.S.C. § 227)
*(On Behalf of Plaintiffs and the Class Against Defendant)*

98.     Plaintiffs hereby incorporate paragraphs 1-97 of this Consolidated Amended Class Action Complaint as if fully stated here.

99.     The foregoing acts and omissions constitute violations of the TCPA, including but not limited to each of the above-cited provisions of 47 U.S.C. § 227.

100.     Because of the Defendants' violations of 47 U.S.C. § 227, Plaintiffs and all Class Members are entitled to, and seek, injunctive relief prohibiting such conduct violating the TCPA in the future.

101.    Plaintiffs and all Class Members are also entitled to, and seek, an award of $500.00 in statutory damages for each text message transmitted in violation of the TCPA pursuant to 47 U.S.C. § 227(b)(3).

102.    The Plaintiffs and Class Members also seek an award of attorneys' fees and costs.

## SECOND CLAIM FOR RELIEF
### KNOWING AND/OR WILLFUL VIOLATION OF THE TCPA (47 U.S.C. § 227)
*(On Behalf of Plaintiffs and the Class Against Defendants)*

103.    Plaintiffs hereby incorporate paragraphs 1-97 of this Consolidated Amended Class Action Complaint as if fully stated here.

104.    The foregoing acts and omissions constitute knowing and/or willful violations of the TCPA, including but not limited to each of the above-cited provisions of 47 U.S.C. § 227.

105.    Because of Defendants' knowing and/or willful violations of 47 U.S.C. § 227, Plaintiffs and all Class Members are entitled to, and seek, injunctive relief prohibiting such conduct violating the TCPA in the future.

106.    Plaintiffs and all Class Members are also entitled to, and seek, treble damages of up to $1,500.00 for each message transmitted in violation of the TCPA pursuant to 47 U.S.C. § 227(b)(3).

107.    Plaintiffs and Class Members also seek an award of attorneys' fees and costs.

## **PRAYER FOR RELIEF**

Plaintiffs pray for relief and judgment in their favor, as follows:

A.    Injunctive relief prohibiting such violations of the TCPA in the future;

B.    As a result of the Defendants' violations of 47 U.S.C. §227(b)(1), Plaintiffs seek for themselves and each Class Member $500.00 in statutory damages for each and every violative text message;

C.    As a result of the Defendants' willful and/or knowing violations of 47 U.S.C. § 227(b)(1), Plaintiffs seeks for themselves and each Class Member treble damages, as provided by the statute, of up to $1,500.00 for each and every violative text message;

D.    An award of attorneys' fees and costs to counsel for Plaintiffs and the Class; and

E.    An Order certifying this action to be a proper class action pursuant to Fed. R. Civ. P. 23, establishing appropriate Classes and any additional subclasses as alleged herein or as the Court deems appropriate, finding that the Plaintiffs are proper representatives of the Classes, and appointing Plaintiffs' counsel as counsel for the Class.

## **DEMAND FOR JURY TRIAL**

The Plaintiffs, on behalf of themselves and the Classes, hereby demand a jury trial on all issues so triable.

October 7, 2019                            Respectfully submitted,

                                           By: */s/ Ruben Conitzer*
                                           David P. Milian (Fla. Bar No. 844421)
                                           Email: dmilian@careyrodriguez.com
                                           Secondary: mmartucci@careyrodriguez.com
                                           Juan J. Rodriguez (Fla. Bar No. 613843)
                                           Email: jrodriguez@careyrodriguez.com
                                           Secondary: service@ careyrodriguez.com
                                           Ruben Conitzer (Fla. Bar No. 100907)
                                           Email: rconitzer@careyrodriguez.com
                                           Secondary: cperez@careyrodriguez.com
                                           CAREY RODRIGUEZ MILIAN GONYA LLP
                                           1395 Brickell Avenue, Suite 700
                                           Miami, FL 33131
                                           Telephone: (305) 372-7474
                                           Facsimile: (305) 372-7475
                                           *Counsel for Lead Named Plaintiff Chad Fernandez*

                                           Benjamin W. Raslavich
                                           Email: ben@theKRfirm.com
                                           KUHN RASLAVICH, P.A.
                                           2114 W. Kennedy Blvd., Suite B
                                           Tampa, FL 33606
                                           Tel: (813) 422-7782
                                           Fax: (813) 422-7783
                                           *Counsel for Named Plaintiff James Thomas*